UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA MIAMI
DIVISION

Lizandro Gilberto Mantilla                         In re: CASE NO.: 11-27192-AJC
                                                   Chapter 13
Debtor.

_____

## MOTION FOR RELIEF FROM STAY

### PARTIES

1. DANIEL MARZANO, in his capacity as PURCHASING MANAGER ("PURCHASING MANAGER"), files this MOTION FROM RELIEF FROM STAY.

2. DEBTOR, LIZANDRO GILBERTO MANTILLA, is the record owner of the 4233 Sunny Brook Way #207 Winter Springs, FL 32708 (Herein "Investment Property")

### HISTORY OF SERENITY AT TUSKAWILLA CONDOMINIUM TERMIANTION

3. On or about April 28, 2006, THE PRESTWICK PARTNERS, LLC, a Florida limited liability company ("PRESTWICK"), executed a Declaration of Condominium (the "Declaration" or "Decl.") for Serenity at Tuskawilla Condominium ("Serenity Condominium"), which was subsequently recorded in O.R. Book 6323, Page 1435 of the Public Records of Seminole County, Florida. The Declaration governs the rights and duties of Termination Trustee , PRESTWICK, SERENITY CONDOMINIUM, and all Unit Owners (as defined in the Declaration). Every Unit Owner is subject to and deemed to be aware of the terms of the Declaration. *See* Dec. §21.

4. PRESTWICK is the holder of greater than 80% of the unit owner voting interests in the

SERENITY CONDOMINIUM,

5. Section 19 of the Declaration has always provided that Serenity Condominium may be withdrawn from the Florida Condominium Act if such withdrawal is "authorized by a vote of Owners owning at least 80% of the applicable interests in the Common Elements and by the Institutional First Mortgagees of Units to which at least sixty-seven percent (67%) of the voting interests of Units subject to mortgages held by Institutional First Mortgages are appurtenant. . . ." (the "Termination Approval Requirements"). Decl. §19. The Termination Approval Requirements have remained unchanged since the inception of the Serenity Condominium. Therefore, all Unit Owners, including DEBTOR, are bound by that provision.

6. Pursuant to Section 3.2 of the SERENITY CONDOMINIUM bylaws, PRESTWICK, as holder of greater than 80% of the unit owner voting interests, called a special meeting of the SERENITY CONDOMINIUM Members. Thereafter, on November 8, 2013, in accordance with Section 6.1 of the Declaration, SERENITY CONDOMINIUM provided DEBTOR and the other Unit Owners with notice of a proposed amendment to Section 19 of the Declaration (the "Sec. 19 Amendment").

7. This Notice of Special Meeting of the Members stated that a special meeting of the Serenity Condominium Members ("Special Member Meeting") would occur on November 25, 2013, to consider and vote on the Sec. 19 Amendment and to thereafter consider and vote on the termination of Serenity Condominium as a condominium.

8. At the meeting, Patrick Fitzgerald was appointed as trustee to administer the condominium estate.

9. DANIEL MARZANO is the agent for the Termination Trustee.

10. The Sec. 19 Amendment did not alter or vary in any way the existing Termination Approval

Requirements. Instead, the Sec. 19 Amendment added provisions that detailed the process for termination of Serenity Condominium once a plan of termination had been adopted in accordance with the Termination Approval Requirements.

11. The Sec. 19 Amendment was approved by greater than 80% of the unit owner voting interests in person or by proxy at the Special Member Meeting held on November 25, 2013. Since Section 6.1 of the Declaration requires that only 66 2/3% of the voting interests are necessary to approve an amendment to the Declaration, the Sec. 19 Amendment passed validly.

12. After the Sec. 19 Amendment was adopted at the Special Member Meeting, the Unit Owners took up consideration of a Plan of Termination of Serenity at Tuskawilla Condominium (the "Plan"). In accordance with the original Termination Approval Requirements contained in Section 19 of the Declaration, more than 80% of the unit owner voting interests voted to remove Serenity Condominium from the provisions of Chapter 718, Florida Statutes (the "Florida Condominium Act").

13. Thus, the Plan of Termination was validly adopted. The Sec. 19 Amendment and the Plan of Termination were duly recorded successively on December 13, 2013 in O.R. Book 9179, Page 474 (Sec. 19 Amendment) and Page 481 (Plan of Termination) of the Public Records of Seminole County, Florida. In accordance with the Plan of Termination, PURCHASING MANAGERs then began the process of terminating Serenity Condominium as a condominium.

**BANKRUPTCY PROCEDURAL POSTURE**

14. DEBTOR, filed a Chapter 13 case on June 21, 2011.

15. On October 17, 2011 DEBTOR, filed a Motion to Value on Real Property (DE 32) (herein "Motion to Value"), whereby the purpose of the Motion was to strip-down the property value to

its current market value.

16. On January 6, 2012, this Honorable Court entered an Order GRANTING the Motion to Value DE 41.

17. On February 13, 2012, the Third Amended Plan in this case was confirmed (DE 49).

18. On January 7, 2015, this Court entered an Order Granting Motion to Modify Plan and Approving Second Modified Chapter 13 Plan DE 60.

### PURCHASING MANAGER CLAIM ON INVESTMENT PROPERTY

19. PURCHASING MANAGER seeks relief from stay for cause to pursue and complete the state termination action and sell the real property interest in the subject property

20. Pursuant to Florida Condominium Act, if 80% of the owners of a condominium association vote to withdraw the Serenity Condominium from the prevue of the Florida Condominium Act, then said Association will be will be withdrawn.

21. Section 19 of the Serenity Condominium Declaration has always provided that Serenity Condominium may be withdrawn from the Florida Condominium Act is such a vote occurred.

22. The Sec. 19 Amendment was approved by greater than 80% of the unit owner voting interests in person or by proxy at the Special Member Meeting held on November 25, 2013.

23. Therefore, currently, the ASSOCIATION is terminated; therefore the Termination Trustee is the equitable owner of all units and can dispose of each according to the best and most just market price.

24. PURCHASING MANAGER is the agent of the Termination Trustee for the purposes of this Motion for Relief from Stay.

25. In support of the PURCHASING MANAGER's interest, the following documents are attached

as exhibits:

    a. Recorded Amendment to Serenity Condominium Declaration (Exhibit 1)
    b. Recorded Serenity Termination Plan (Exhibit 2)
    c. PURCHASING MANAGER Affidavit  (Exhibit 3)

26. In further support of PURCHASING MANAGER's position, he has deposited the amount of $35,000.00 in Baker Donelson, PC attorney's escrow account to be disbursed by the court accordingly.

## MOTION FOR RELIEF FROM STAY
*Pursuant to 11 U.S.C. § 362(d)(1), 11 U.S.C. § 362(d)(2)(A), and 11 U.S.C. § 362(d)(2)(B)*

### Bankruptcy Court Jurisdiction to Grant Stay Relief

27. In the case of ***In re: Andrea Shaye Morgan, 09-16188-BKC-AJC***, this court held the following regarding relief from stay when the cause of action is purely a state court matter and there is no great prejudice to the bankruptcy estate:

28. *Court may grant a party in interest relief from this automatic stay "for cause." 11 U.S.C. § 362(d)(1). Although the Bankruptcy Code fails to define precisely what constitutes "cause," for stay relief purposes, courts have held that cause exists to allow a state court action to proceed where the bankruptcy court may abstain from deciding those issues. In re Tuscon Estates, Inc., 912 F.2d 1162, 1166 (9th Cir. 1990); see also Allied Capital, Inc. v. Gibson (In re Gibson), 349 B.R. 54 (Bankr.D.Idaho 2006) (Congress has stated: [I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from many duties that may be handled elsewhere"). The factors for where a Bankruptcy Court may abstain from deciding a certain issue are enumerated in 28 U.S.C. §*

*1334 as follows:*

29. *Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced and can be timely adjudicated, in a State forum of appropriate jurisdiction. 28 U.S.C. § 1334.* **In re: Andrea Shaye Morgan, 09-16188-BKC-AJC**

## MOTION FOR RELIEF FROM STAY "FOR CAUSE" PURSUANT TO 11 U.S.C. § 362(D)(1)

### "Cause exists to allow a state court action to proceed where the bankruptcy court may abstain from deciding those issues."

30. As stated in the statement of facts, the condominium termination process is a creature of state law purely. The condominium termination process is governed exclusively by the *Florida Condominium Act, Florida Statutes Title XL, Chapter 718, Section 111* and Florida case and common law.

31. This process has no equivalent in Federal Law or more specifically under the US Bankruptcy Code.

32. Pursuant to *28 U.S.C. § 1334,* it is proper that this matter should be heard and dealt with in state court, where the debtor has distinct and separate state court remedies that he can pursue if he so chooses.

33. Accordingly, it is proper that this Court "*abstain from hearing such proceeding if an action is commenced and can be timely adjudicated, in a State forum of appropriate jurisdiction*" and

allow the State Court mechanism produce the most lawful and just result by granting stay relief.

### *"No great prejudice to the bankruptcy estate (or the debtor or the mortgagee) would result"*

34. 11 U.S.C. § 1322(b)(2) gives a debtors to strip down and cram mortgages that are secured by real estate that is not the debtor's principal residence and only pay the value in the life of the plan.

35. Pursuant to 11 U.S. Code § 1322 **(4),**

    a. *"notwithstanding any other provision of this section, may provide for less than full payment of all amounts owed for a claim entitled to priority under section 507 (a)(1)(B) only if the plan provides that all of the debtor's projected disposable income for a 5-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan."*

36. This means that unless the plan in question pays 100% to all allowed unsecured creditors, in order for a plan that proposed a strip down or cram to be feasible and confirmed, the money that is paid to the estate must not come from the debtor's projected disposable income.

37. The inference one can make from this rule is that none of the money the debtor has paid into the bankruptcy estate pursuant to the confirmed plan that relates to the cram property has come from the debtor. Therefore, there is no prejudice at all to the debtor if the property reverts back to the bank or the PURCHASING MANAGER accordingly because none of the money he paid came from his personal funds. Debtor will still receive the benefit of the bankruptcy discharge if he completes the plan and could possibly convert to Chapter 7 and not make further plan payments.

38. Moreover, there is no great harm to the bankruptcy estate because if the plan is modified and the property is removed there is no change to the amount of money that the unsecured creditors will receive.

39. Furthermore, the mortgagee Specialized Loan Servicing has received adequate protection payments throughout the life of the plan and may receive a further payout from the PURCHASING MANAGER if state law allows such a distribution.

### *Further "cause" pursuant to 11 U.S.C. § 362(d)(1)*

40. The PURCHASING MANAGER argues that it is not economically feasible or efficient to further delay the condominium termination process

41. If the bankruptcy plan is allowed to continue until the end and the DEBTOR makes all payments and receives his discharge, he is still not entitled to retain the property pursuant to the termination process. Upon, discharge and the lifting of the stay, the property will immediately revert to the possession of the PURCHASING MANAGER for sale without further court order. The result is inevitable.

42. The PURCHASING MANAGER has funds set aside to pay the market value to either the mortgagee or the mortgagor, whoever makes a timely and valid claim for that money.

43. Furthermore, this is the last property that is being litigated by the PURCHASING MANAGER and TERMINATION TRUSTEE. The condominium cannot be converted to its next economically efficient use without resolution to this instant matter. It makes no economic sense to delay the PURCHASING MANAGER's power to close his condominium estate for over a year and a half if the exact same result with occur if the property is transferred immediately.

## MOTION FOR RELIEF FROM STAY PURSUANT TO 11 U.S.C. § 362(D)(2)(A) PROPERTY IS UNDER-SECURED

44.  11 U.S.C. § 362(d)(2) allow for the following in regards to real property in a Chapter 13 case:

45.  (**2**) with respect to a stay of an act against property under subsection (a) of this section, if—
    a. the debtor does not have an equity in such property; and
    b. such property is not necessary to an effective reorganization; (**11 U.S.C. § 362(d)**)

46.  Pursuant to 11 U.S.C. § 362(d)(2)(A), property in question is under secured and has no equity whereby it is secured by a debt to Specialized Loan Servicing, in the amount of $201,230.35 pursuant to POC 2-1

47.  The value of the property at the time of filing is $32,500.00, pursuant to the Appraisal.

48.  Notwithstanding the Order on the Motion to Value, the property is clearly under-secured and no equity exists

49.  Thus pursuant to 11 U.S.C. § 362(d)(2)(A), stay relief should be granted.

## MOTION FOR RELIEF FROM STAY PURSUANT TO 11 U.S.C. § 362(D)(2)(B) PROPERTY IS NOT NECESSARY TO EFFECTUATE THE CHAPTER 13 PLAN

50.  Pursuant to *11 U.S.C. § 362(d)(2)(B)*, when a property is not necessary to an effective reorganization, stay relief is appropriate.

51.  In this case, DEBTOR is seeking to discharge $293,727.76 in unsecured debt.

52.  The INVESTMENT PROPERTY, by definition is not the DEBTOR's homestead.

53.  Although DEBTOR is not paying 100% to his unsecured creditors, he is seeking a windfall by obtaining title in a property that he can no longer legally own, occupy or rent.

54. DEBTOR's schedules indicate that he is collecting $550 in rent, but the carrying cost is almost $1000.00 per month. DEBTOR is therefore using disposable income to fund the strip down and not paying it to the unsecured creditors.

55. DEBTOR will still obtain his discharge if this motion is granted and the INVESTMENT PROPERTY administered by the Termination Trustee.

56. Pursuant to *11 U.S.C. § 362(d)(2)(B)*, it is appropriate that this court grant stay relief.

**WHEREFORE**, the Debtors respectfully request that this Court: 1. Grant the Motion for Relief from Stay; 2) Determine the rightful party to receive funds amount of $35,000.00.

Respectfully Submitted:

MENDEZ LAW OFFICES, PLLC Attorney for Debtor
P.O. BOX 228630
Miami, Florida 33172
Telephone: 305.264.9090
Email: diego.mendez@mendezlawoffices.com
By:_____S/_____
DIEGO GERMAN MENDEZ, ESQ.
FL BAR NO.: 52748