MARYANNE MORSE, SEMINOLE COUNTY
CLERK OF CIRCUIT COURT & COMPTROLLER
BK 08179 Pgs 0474 - 480; (7pgs)
CLERK'S # 2013156265
RECORDED 12/13/2013 03:37:19 PM
RECORDING FEES 61.00
RECORDED BY H DeVore

Prepared by and After Recording
Return to:

Martha Anderson Hartley, Esq.
Baker, Donelson, Bearman, Caldwell
 & Berkowitz, PC
390 N. Orange Avenue, Suite 1875
Orlando, Florida  32801

## AMENDMENT TO DECLARATION OF CONDOMINIUM OF SERENITY AT TUSKAWILLA CONDOMINIUM

WHEREAS, that certain DECLARATION OF CONDOMINIUM OF SERENITY AT TUSKAWILLA CONDOMINIUM is recorded at Official Records Book 6323, Page 1435, Public Records of Seminole County, Florida, (the "Declaration"); and

WHEREAS, pursuant to Section 6.1 of the Declaration, a duly noticed meeting of the Members of the Association was held on Nov. 25, 2013, to consider a proposed amendment to Section 19 of the Declaration, which proposed amendment was approved by an affirmative vote representing in excess of 67% of the voting interests of all Unit Owners.

NOW, THEREFORE, effective upon recordation of this Amendment to the Declaration in the Public Records (as hereafter defined), the following amendment is hereby made to the Declaration.  Capitalized terms not expressly defined herein shall have the meaning given in the Declaration.

1. Section 19 of the Declaration is hereby deleted in its entirety and the following substituted therefor:

**Substantial rewording of Declaration.  See Section 19 of Declaration for present text.**

"19. Termination of Condominium.  The Condominium shall continue until (i) terminated by casualty loss, condemnation or eminent domain, as more particularly provided in this Declaration, or (ii) such time as withdrawal of the Condominium Property from the provisions of the Act ("Termination") is authorized by a vote of Owners owning at least 80% of the applicable interests in the Common Elements (collectively, the "Approving Owner"), and by Institutional First Mortgagees of Units to which at least 67% of the voting interests of Units subject to mortgages held by Institutional First Mortgagees are appurtenant (collectively, the "Primary Institutional

MAH01 542159 v1
2926160-000001 04/01/2013

First Mortgagee"). In the event such withdrawal is authorized under subsection (ii) above, the following provisions and procedures shall apply:

a. The authorization of Termination shall be evidenced by a plan of termination ("Plan") contained in a written document executed in the same manner as a deed by the Approving Owner, by the Termination Trustee, as hereafter defined, and by the Primary Institutional First Mortgagee, if any, at the time the Termination was authorized. A copy of the proposed Plan shall be given to all Unit Owners, in the same manner as for notice of an annual meeting, at least 14 days prior to the meeting at which the Plan is to be voted upon or prior to or simultaneously with the distribution of the solicitation seeking execution of the Plan or written consent to or joinder in the Plan. The Plan, executed as set forth above, and including any other consents or joinders of additional Unit Owners, must be recorded in the public records of Seminole County, Florida (the "Public Records").

b. The Plan must specify:

(i) The name, address, and powers of the Termination Trustee.

(ii) A date after which the Plan is void if it has not been recorded.

(iii) The interests of the respective Unit Owners in the Association Property, Common Surplus, and other assets of the Association, which shall be the same as the respective interests of the Unit Owners in the Common Elements immediately before the Termination.

(iv) The interests of the respective Unit Owners in any proceeds from the sale of the Condominium Property. The Plan may apportion those proceeds pursuant to any method prescribed in subsection (12) of Section 718.117, Florida Statutes, as in effect as of the effective date of this Amendment (the "Termination Statute"). If, pursuant to the Plan, Condominium Property or real property owned by the Association is to be sold following termination, the Plan must provide for the sale and may establish any minimum sale terms.

(v) Any interests of the respective Unit Owners in insurance proceeds or condemnation proceeds that are not used for repair or reconstruction at the time of Termination. The Plan may apportion those proceeds pursuant to any method prescribed in subsection (12) of the Termination Statute.

c. The Plan may include the following optional provisions:

(i) The Plan may provide that each Unit Owner retains the exclusive right of possession to the portion of the real estate which formerly constituted the Unit if the Plan specifies the conditions of possession.

(ii) If the Plan is to be conditional, the Plan must specify the conditions for Termination. A conditional Plan does not vest title to the Units and the Condominium Property in the Termination Trustee until the Plan and a

2

MAH01 542159 v1
2926160-000001 04/01/2013

certificate executed by the Association with the formalities of a deed, confirming that the conditions in the conditional Plan have been satisfied or waived by the requisite percentage of the voting interests in the Association, have been recorded.

d. The Plan shall be effective upon recordation in the Public Records or at a later date specified in the Plan (the "Effective Date"). If the Plan is conditional, the Effective Date shall be the date upon which the certificate described in subparagraph c.(ii) above is recorded.

e. Upon the Effective Date, (i) title to the Condominium Property (including, but not limited to, all Units) vests in the Termination Trustee, and (ii) liens that encumber a Unit shall be transferred to the proceeds of sale of the Condominium Property and the proceeds of sale or other distribution of Association Property, Common Surplus, or other Association assets attributable to such Unit in their same priority. The Unit Owners thereafter become the beneficiaries of the proceeds realized from the Plan (the "Termination Proceeds") as set forth in the Plan.

f. The Termination Trustee may deal with the Condominium Property or any interest therein if the Plan confers on the Trustee the authority to protect, conserve, manage, sell, or dispose of the Condominium Property. The Termination Trustee, on behalf of the Unit Owners, may contract for the sale of real property being terminated.

g. The Plan must provide for the determination of the fair market value of all of the Units by one or more independent appraisers selected by the Termination Trustee, which appraisal(s) shall include the fair market value of the Common Elements as apportioned to each Unit in accordance with each Unit's respective interest in the Common Elements as specified in this Declaration immediately before the Termination (the "Percentage Share(s)"). The interests of the Unit Owners in the Condominium Property other than the Units and the Common Elements, including the Association Property, Common Surplus, and other assets of the Association, shall be the same as their Percentage Shares.

h. The Association shall serve as termination trustee unless another person is appointed in the Plan (the "Termination Trustee" or "Trustee"). Except to the extent expressly provided to the contrary in the Plan, the Termination Trustee shall be vested with the powers given to the Board pursuant to the Declaration, the Bylaws, and subsection (6) of the Termination Statute. If the Association is not the Termination Trustee, the Termination Trustee's powers shall be coextensive with those of the Association to the extent not prohibited in the Plan or the order of appointment. If the Association is not the Termination Trustee, the Association shall transfer any Association Property to the Termination Trustee. If the Association is dissolved, the Termination Trustee shall also have such other powers necessary to conclude the affairs of the Association.

i. Following Termination, the Condominium Property, Association Property, Common Surplus and other assets of the Association shall be held by the Termination

3

Trustee pursuant to the Plan, as trustee for Unit Owners and Lienors, in their order of priority unless otherwise set forth in the Plan. Not less than 30 days before the first distribution of Termination Proceeds, the Termination Trustee shall deliver by certified mail, return receipt requested, a notice of the estimated distribution to all Unit Owners, lienors of the Condominium Property, and Lienors of each Unit at their last known addresses stating a good faith estimate of the amount of the distribution to each class and the procedures and deadline for notifying the Termination Trustee of any objections to the allocation of the proposed distribution among each class. The deadline for objecting must be at least 15 days after the date the notice was mailed. If a Unit Owner or Lienor files a timely objection with the Termination Trustee, the Trustee need not distribute the funds and property allocated to the respective Unit Owner or Lienor until the Trustee has had a reasonable time to determine the validity of the adverse claim. In the alternative, the Trustee may interplead the Unit Owner, Lienor, and any other person claiming an interest in the Unit and deposit the funds allocated to the Unit in the registry of the Circuit Court for Seminole County, Florida, at which time the Condominium Property, Association Property, Common Surplus, and other assets of the Association are free of all claims and liens of the parties to the suit. In an interpleader action, the Trustee and prevailing party may recover reasonable attorneys' fees and costs.

  j. The proceeds from any sale of Condominium Property or Association Property and any remaining Condominium Property or Association Property, Common Surplus, and other assets of the Association shall be distributed in the following priority:

  (i) To pay the reasonable Termination Trustee's fees and costs and accounting fees and costs.

  (ii) To lienholders of liens recorded prior to the recording of the Declaration.

  (iii) To purchase-money lienholders on Units to the extent necessary to satisfy their liens; however the distribution may not exceed a Unit Owner's share of the proceeds.

  (iv) To lienholders of liens of the Association which have been consented to under Section 718.121(1), Florida Statutes.

  (v) To creditors of the Association, as their interests may appear.

  (vi) To Unit Owners, the proceeds of any sale of Condominium Property subject to satisfaction of liens on each Unit in their order of priority, in shares specified in the Plan.

  (vii) To Unit Owners, the remaining Condominium Property, subject to satisfaction of liens on each Unit in their order of priority, in shares specified in the Plan.

  (viii) To Unit Owners, the proceeds of any sale of Association Property, the remaining Association Property, Common Surplus, and other assets of

4

the Association, subject to satisfaction of liens on each Unit in their order of priority, in shares specified in the Plan.

The proceeds of any sale of Condominium Property pursuant to the Plan may not be deemed to be Common Surplus or Association Property.

After determining that all known debts and liabilities of the Association have been paid or adequately provided for, the Termination Trustee shall distribute the remaining assets pursuant to the Plan. Distribution may be made in money, property, or securities and in installments or as a lump sum, if it can be done fairly and ratably and in conformity with the Plan. Distribution shall be made as soon as is reasonably consistent with the beneficial liquidation of the assets.

k. Notwithstanding subparagraph j. above, the Plan may provide for the Termination Trustee to sell all or portions of the Condominium Property to the Approving Owner owning the largest percentage of voting interests in the Association (the "Purchasing Owner") on such terms as are otherwise consistent with the provisions of this Section 19, in which event the proceeds from the sale of such Condominium Property shall be distributed to the Owners of Units not owned by the Purchasing Owner and to any Lienor of such Units, in accordance with their priority, and the remaining Termination Proceeds shall be distributed in accordance with the provisions of subparagraph j. above. The Purchasing Owner shall have no beneficial interest in the proceeds of the sale of Condominium Property derived from a sale to the Purchasing Owner.

l. The Association shall continue to exist to conclude its affairs, prosecute and defend any actions by or against it, collect and discharge obligations, dispose of and convey its property, and collect and divide its assets, but not to act except as necessary to conclude its affairs."

[Signature Pages Follow]

5

## CERTIFICATE OF AMENDMENT

I hereby certify that the above Amendment to the Declaration of Condominium of Serenity at Tuskawilla Condominium, was adopted in accordance with provisions of Section 6.1 of the Declaration at a duly called meeting of the Members of the Association held on the 25TH day of NOVEMBER, 2013, and will take effect upon recording in the Public Records of Seminole County, Florida.

WITNESSES:

Witness Name: Natacha Vallina

Witness Name: Frances G. Ortiz

SERENITY AT TUSKAWILLA
CONDOMINIUM ASSOCIATION, INC.

By: _____
Name: Michael Cosculluela
Title: PRESIDENT

Address: 14211 Commerce Way, Ste. 300
Miami Lakes, FL 33016

STATE OF Florida

COUNTY OF Miami-Dade

This Amendment to the Declaration of Condominium of Serenity at Tuskawilla Condominium was acknowledged before me this 26 day of November, 2013, by MICHAEL COSCULLUELA, in his/her capacity as President of the SERENITY AT TUSKAWILLA CONDOMINIUM ASSOCIATION, INC., on behalf of the Association. Said person is either ☒ personally know to me or ☐ produced _____ as identification.

Notary Public, State of Florida
My Commission Expires: _____

[Affix Notary Seal]

FRANCES G. ORTIZ
MY COMMISSION # EE 003799
EXPIRES: June 23, 2014
Bonded Thru Notary Public Underwriters

6

## CONSENT OF
## PRIMARY INSTITUTIONAL FIRST MORTGAGEE

The undersigned, as the Primary Institutional First Mortgagee (as herein defined), hereby consents to the foregoing Amendment To Declaration of Serenity at Tuskawilla Condominium.

Witnesses Signatures Below (two required):

Witness Signature on Above Line
Printed Name: Ourder F Cordobs

Witness Signature on Above Line
Printed Name: Javier Gruneiro

**FIRSTBANK PUERTO RICO**, a banking institution organized under the laws of the Commonwealth of Puerto Rico, doing business in Florida as FirstBank Florida

By: _____
Name: Elsie M Alvarez
Title: Senior Vice President

Date: 12-12, 2013

STATE OF Florida ) 
COUNTY OF Miami-Dade ) s.s.:

The foregoing instrument was acknowledged before me this 12th day of December, 2013, by Elsie M. Alvarez, as S.V.P. of FIRSTBANK PUERTO RICO, a banking institution organized under the laws of the Commonwealth of Puerto Rico, doing business in Florida as FirstBank Florida, on behalf of the said banking institution. Said person [✓] is personally known to me or [ ] produced _____ as identification.

AFFIX NOTARY STAMP OR SEAL:

Notary Public Signature on Above Line
Printed Name: _____
Notary Public, State of _____
My commission expires: _____

CARMEN O. GUARDARRAMA
MY COMMISSION # EE 094303
EXPIRES: May 15, 2015
Bonded Thru Notary Public Underwriters

7

MAH01 542159 v1
2926160-000001 04/01/2013