MARYANNE MORSE, SEMINOLE COUNTY
CLERK OF CIRCUIT COURT & COMPTROLLER
BK 08179 Pgs 0481 - 494; (14pgs)
CLERK'S # 2013156266
RECORDED 12/13/2013 03:37:19 PM
RECORDING FEES 120.50
RECORDED BY H DeVore



This instrument was prepared by, and
after recording, return to:
Martha Anderson Hartley, Esq.
Baker, Donelson, Bearman, Caldwell
 & Berkowitz, PC
200 South Orange Avenue, Suite 2900
Orlando, Florida 32801

*Note: This Plan of Termination relates to the Declaration of Condominium of Serenity at Tuskawilla Condominium, recorded in O. R. Book 6323, Page 1435, of the Public Records of Seminole County, Florida, as amended (the "**Declaration**").*

## PLAN OF TERMINATION OF SERENITY AT TUSKAWILLA CONDOMINIUM

Pursuant to Section 19 of the Declaration and Section 718.117, Florida Statutes, to the extent applicable, the following Plan of Termination of Serenity at Tuskawilla Condominium (the "**Plan**"), is adopted as of _NOVEMBER 25_, 2013:

1. <u>Condominium</u>. Serenity at Tuskawilla Condominium (the "**Condominium**") was created by the Declaration and contains three hundred sixty-eight (368) residential Units which are more particularly described in the Declaration. <u>Exhibit "A"</u> attached hereto sets forth all of the Units currently comprising the Condominium and which are affected by this Plan. The Condominium does not include any timeshare units.

2. <u>Defined Terms</u>. All capitalized terms, if not otherwise defined herein, shall have the meaning set forth in the Declaration, or in the absence thereof, in the Florida Condominium Act (Chapter 718, Florida Statutes, as it exists on the date hereof).

3. <u>Termination of the Condominium</u>. Upon the "Effective Date," as hereafter defined in Section 14, the Condominium shall automatically be deemed terminated, pursuant to and as permitted under the Declaration, and to the extent applicable, Section 718.117, Florida Statutes (the "**Termination Statute**"). This Plan is a conditional plan pursuant to Section 718.117(11)(b), of the Termination Statute. Upon the Effective Date, title to the Condominium Property (as hereafter defined) vests in the Trustee (as hereafter defined) pursuant to Section 718.117(13) of the Termination Statute and Section 19 of the Declaration, and the Unit Owners' rights and title as tenants in common in undivided interests in the Condominium Property vest in the Trustee. The Unit Owners thereafter become the beneficiaries of the proceeds realized from the Plan, as further described herein. Pursuant to Section 718.117(12)(d) and Section 19 of the Declaration, liens that encumber a Unit shall be transferred to the proceeds of sale of the Condominium Property attributable to such Unit in their same priority. It is anticipated that, pursuant to the Plan, record

O MAH01 542147 v5
2926160-000001 11/04/2013



CERTIFIED COPY - MARYANNE MORSE
CLERK OF THE CIRCUIT COURT AND
COMPTROLLER
SEMINOLE COUNTY, FLORIDA

BY _____ DEPUTY CLERK

holders of liens ("**Lienors**") against the Units (other than the Primary Institutional First Mortgagee as defined below) as of the date of a Conveyance (as hereafter defined) will receive less than the amounts necessary to fully satisfy their mortgage liens encumbering the Units. Subject to the consent rights granted herein to FirstBank Puerto Rico, a banking institution organized under the laws of the Commonwealth of Puerto Rico, doing business in Florida as FirstBank Florida, or any other lender who subsequently becomes the "Primary Institutional First Mortgagee," as defined in the Declaration (the "**Primary Institutional First Mortgagee**") and any other limitations set forth in the existing loan documents (the "**Loan Documents**") between the Purchasing Owner, as hereinafter defined, and the Primary Institutional First Mortgagee, the Trustee may deal with the Condominium Property or any interest therein as it sees fit, without requiring the consent of any Unit Owners/beneficiaries or Lienors inasmuch as the Plan confers on the Trustee the authority to protect, conserve, manage, sell, or dispose of the Condominium Property.

4. The Condominium Property. For purposes of the Plan, the "**Condominium Property**" shall mean the aggregate of the following:

(a) all property which was submitted to the condominium form of ownership pursuant to the Declaration, including, without limitation, any and all Units and/or Common Element;

(b) any and all real property owned by the Association;

(c) any and all improvements located on the real property referenced in subparagraphs (a) or (b) above (collectively, the "**Realty**", including buildings, structures and other facilities);

(d) all fixtures, equipment, machinery, vehicles, furnishings and items of personal property located on and used in the operation of the Realty and owned by the Association;

(e) all applicable licenses, permits, warranties, authorizations and approvals pertaining to ownership and/or operation of the Realty in the Association's possession, if any;

(f) the Common Surplus, if any;

(g) any and all intangible rights of the Association affecting the Realty; and

(h) all contract rights pertaining to the ownership and operation of the Realty which are assignable and would affect the Property after conveyance by the Trustee, if any.

5. Termination Trustee. Section 19 of the Declaration requires that this Plan name a termination trustee. The termination trustee ("**Trustee**") under this Plan is Scott W. Fitzpatrick, Esq. who has a mailing address of Owens Law Group, P.A., 811-B Cypress Village Boulevard, Ruskin, Florida 33573-06724. Subject to the limitations set forth in this Plan and the Loan Documents, the Trustee shall have all of the powers and authority of a termination trustee as set forth in Section 718.117, Florida Statutes, and this Plan, including, but not limited to, (i) all of the powers and authority set forth in Sections 718.117(6) and 718.117(13), Florida Statutes, including, but not limited to, all powers given to the Board of Directors of Serenity at Tuskawilla Condominium Association, Inc. (the "**Association**") pursuant to the articles of incorporation and bylaws of the Association and the Declaration; (ii) the power and authority to protect, conserve,

2

manage, sell or dispose of the Condominium Property pursuant to Section 718.117(14), Florida Statutes; (iii) the power to convey by trustee's deed fee simple title in and to the Realty, free and clear of all mortgages or other liens encumbering the Units prior to the date of such deed, in accordance with the other terms of this Plan; and (iv) all other powers and authority necessary to effectuate this Plan. After the Effective Date of this Plan, the Association shall transfer all Association Property to the Trustee.

6. Appraisal. By no later than sixty (60) days following the recordation of this Plan in the Public Records ("**Plan Recordation**"), the Trustee shall retain an independent appraiser pursuant to Section 718.117(12), Florida Statutes, to determine the fair market value of each Unit immediately prior to the Plan Recordation (the "**Appraisal**") and the fair market value of any other portions of the Condominium Property, including the Common Elements, prior to the termination (if the Common Elements are to have value separate and apart from the value of the Units). Within ten (10) days following receipt of the Appraisal, the Trustee shall give notice to each person that was a Unit Owner prior to the Plan Recordation (the "**Notice of Appraisal**") disclosing the values determined pursuant to the Appraisal.

7. Interests of Owners in Condominium Property. As provided for in Section 718.117(10)(c), Florida Statutes, upon the Effective Date, the interests of the former Unit Owners in the Condominium Property, including the Association Property, Common Surplus, and other assets of the Association, shall be the same as their respective interests in the Common Elements of the Condominium, as set forth in Exhibit "B" to the Declaration (their "**Percentage Share(s)**").

8. Interest of Owners in Proceeds of Sale of the Condominium Property. Except as expressly provided to the contrary herein, and subject to the provisions below with respect to a sale to the Purchasing Owner, the interests of the respective Unit Owners in any proceeds from the sale of the Condominium Property, shall be:

    (a) as to a sale of a Unit, the value of such Unit based on the fair market value of the Unit as determined by the Appraisal ("**Interest in the Units**"); and

    (b) as to the sale of any other Property, the same as their Percentage Shares ("**Interest in Other Proceeds**").

Within the Notice of Appraisal, the Trustee shall notify each person that was a Unit Owner immediately prior to the Plan Recordation of their Interest in the Units and their Interest in Other Proceeds, based upon the values determined in the Appraisal.

9. Insurance Proceeds or Condemnation Proceeds. During the implementation of this Plan, the interests of the respective Unit Owners in any insurance proceeds or condemnation proceeds that are not used for repair or reconstruction in accordance with the requirements of the Declaration shall be held by the Trustee for the benefit of the Owners or their Lienors, as their interests may appear, in accordance with the terms of this Plan and the Loan Documents. At the time of the distribution by Trustee, as contemplated herein, any remaining insurance proceeds or condemnation proceeds shall be distributed to the Owners or their Lienors, as their interests may appear, in accordance with their respective Percentage Shares.

O MAH01 542147 v5
2926160-000001 11/04/2013

10. <u>Expiration Date</u>. This Plan shall be void and of no force or effect unless it is recorded in the Public Records of Seminole County, Florida (the "**Public Records**") by not later than December 31, 2014.

11. <u>Status of Association</u>. During the implementation of this Plan, the Association shall continue in existence to conclude its affairs, prosecute and defend actions by or against it, collect and discharge obligations, dispose of and convey its property, and collect and divide its assets, but not to act except as necessary to conclude its affairs, including, but not limited to, the implementation of this Plan. The Association shall retain the power and authority to enact and collect assessments, record claims of lien against Units or the beneficial interests under this Plan, and prosecute actions to foreclose claims of lien against the Units or the beneficial interests under this Plan. Any assessment due the Association from any Owner as of the date of the recording of this Plan in the Public Records shall survive termination of the Condominium, shall remain a personal obligation of the Owner, shall be enforceable by the Association against the Owner and the Owner's beneficial title in, and right to receive any payment under, this Plan. This Plan is not intended to, nor shall it be interpreted to, extinguish, release, waive, merge, or discharge any unpaid assessments existing as of the Effective Date or thereafter becoming due or any lien to secure the payment of same. The Trustee shall have the right to set off against any payment due any Owner under this Plan any amount then due the Association from that Owner.

12. <u>Sale to Purchasing Owner.</u>

(a) The Prestwick Partners, LLC, a Florida limited liability company ("**Purchasing Owner**"), holding more than eighty percent (80%) of the voting interests of the Association as of the Effective Date and record owner of Units to which more than eighty percent (80%) of the Common Elements are appurtenant, has expressed an interest in acquiring the Condominium Property. The Units owned by Purchasing Owner as of the Effective Date are listed on <u>Exhibit "B"</u> attached hereto (the "**Purchasing Owner's Units**"). Provided that Purchasing Owner delivers to Trustee, in cleared funds, not later than ninety (90) days following receipt of the Notice of Appraisal; (i) the aggregate amount representing the values of the Units in the Condominium not owned by Purchasing Owner (the "**Designated Units**"), as set forth in the Appraisal; <u>plus</u> (ii) as to all other Condominium Property, the aggregate amount representing the Interest in Other Proceeds attributable to the Designated Units, based on the Appraisal; and <u>less</u> (iii) with respect to each Designated Unit, all unpaid ad valorem taxes and assessments (including Association Assessments), pro rated through the date of Conveyance, as hereafter defined, (the "**Pro Rated Assessments**"), the Trustee shall convey the Condominium Property (including, without limitation, all former Units and Common Elements) to Purchasing Owner by Trustee's deed (the "**Conveyance**"). The amounts set forth in subparagraphs (i) through (iii) are collectively referred to herein as the "**Sale Proceeds**." By way of example only, if the Appraisal were to determine that the aggregate value of the Designated Units was $1,000,000, that the value of the other portions of the Condominium Property was $200,000, that the Interest in Other Proceeds allocable to the Designated Units was 10%, and that the aggregate Pro Rated Assessments was $5,000, then the Sale Proceeds would equal $1,015,000.00, which is 100% of the value of the Designated Units plus 10% of the value of the other Condominium Property and less the Pro Rated Assessments. The Trustee shall be entitled to withhold and/or remit from the Sale Proceeds attributable to any Interest in the Units any amount required to be withheld under the Foreign Investment in Real Property Tax Act of 1980 ("FIRPTA") of the Internal Revenue Code of 1986, as amended, as if the former Owner of a Designated Unit were deemed to be the seller of the Unit.

4

(b) In addition to providing the Sale Proceeds to Trustee, Purchasing Owner shall provide a written undertaking to pay all documentary stamp taxes and/or recording fees incurred in connection with the Conveyance of the Condominium Property.

(c) Between the Plan Recordation and the Effective Date, any Owner of a Designated Unit is authorized to enter into a contract to sell his Unit (a "**Qualified Sale Contract**") upon such terms as may be agreed in such Contract provided that each Qualified Sale Contract must contain the following: (i) a provision stating that the execution by the Unit Owner of the Qualified Sale Contract is a joinder and consent to this Plan by the selling Unit Owner; and (ii) a provision granting to the Trustee the option to automatically terminate a Qualified Sale Contract on the Effective Date if the closing thereunder has not occurred by such time or to proceed with the sale under the terms of the Qualified Sale Contract but substituting a Trustee's deed for the deed otherwise required from the former Unit Owner under such Contract. In the event a Qualified Sale Contract is so terminated, the Designated Unit which was the subject of such Qualified Sale Contract shall be dealt with in the same manner as any other Designated Unit hereunder. Upon closing under a Qualified Sale Contract, the former owner of the Designated Unit shall have no further Interest in the Units but shall remain entitled to receive his Interest in Other Proceeds, if any, to be distributed by the Trustee as hereafter provided.

(d) Between the Plan Recordation and the Effective Date (the "**Continued Occupancy Period**"), any Owner residing in a Unit may continue to do so and any occupant renting a unit may continue to occupy the Unit under the terms of the lease in effect prior to the Effective Date, including the obligation to pay rent (which shall continue to be paid during the Continued Occupancy Period to the landlord/Unit Owner notwithstanding the termination hereunder). Except to the extent the Association has taken action under Section 718.116(11), Florida Statutes, to cause such rent to be paid to the Association as a result of delinquent assessments, neither the Trustee nor any other Unit Owner (other than the landlord) shall have any claim to any rent paid and/or payable during the Continued Occupancy Period.

(e) From and after the Continued Occupancy Period, (i) all persons occupying a Designated Unit must immediately vacate the Property, unless they separately enter into a lease or other occupancy arrangement with Purchasing Owner, and (ii) all persons renting from Purchasing Owner shall have their occupancy remain unaffected and shall continue to be bound by the terms of their lease, including the obligation to pay rent to Purchasing Owner. Purchasing Owner agrees that upon receipt of title to the Property, it shall extend to each person occupying a Designated Unit on the date of Conveyance, an opportunity to lease the Unit from Purchasing Owner for a term up to, but not to exceed, twelve (12) months following the date of Conveyance at a market rent reasonably established by Purchasing Owner and otherwise on such terms as Purchasing Owner typically requires from other tenants occupying Units owned by Purchasing Owner within the Condominium.

13. Sale other than to Purchasing Owner.

(a) If Purchasing Owner elects not to purchase the Property or otherwise fails to timely deliver the Sale Proceeds to Trustee, after recording the Confirmation Certificate as permitted under Section 14(b) hereof, the Trustee shall be free to sell, convey, transfer or exchange the Condominium Property on any terms that the Trustee and the Primary Institutional First Mortgagee have approved in writing (the "**Approved Alternate Sale Plan**") and which the Trustee believes to be in the best interests of the former Unit Owners, without requiring the consent or

5

approval of any other parties (except the Primary Institutional First Mortgagee whose consent and joinder is expressly require).

      (b)    After the approved Alternate Sale Plan is adopted by the Trustee and the Primary Institutional First Mortgagee, the Trustee shall have full power and authority (in its sole and absolute discretion) to determine whether to extend the Continued Occupancy Period, and, if so, whether to change the terms and/or conditions of continued occupancy. Trustee's authority shall include, without limitation, the right to allow rent to continue to be paid directly to the landlord/Unit Owner without being deemed Sale Proceeds and without entitling any other Unit Owners to any claim relating to such rent or any portion thereof.

    14.    <u>Termination Conditions; Effective Date</u>. Despite the Plan Recordation in the Public Records, this Plan is conditional pursuant to Section 718.117(11)(b), Florida Statutes, and will not vest title to the Condominium Property in the Trustee or transfer the lien that encumbers a Unit to the proceeds of sale of a Unit until a certificate (the "**Confirmation Certificate**"), executed by the Trustee (and joined by the Primary Institutional First Mortgagee) with the formalities of a deed, has been recorded in the Public Records stating that all of the conditions set forth in <u>either</u> subparagraph (a) <u>or</u> subparagraph (b) of this Section 14 (each, a "**Termination Condition**") have been met:

      (a)    Purchasing Owner has delivered to the Trustee (i) a statement electing to purchase the Condominium Property in accordance with the terms of this Plan, (ii) evidence satisfactory to the Trustee and the Primary Institutional First Mortgagee that the Sale Proceeds are or will be available for such purchase; (iii) evidence satisfactory to the Primary Institutional First Mortgagee that, after the Conveyance, it will have a first mortgage on all of the Property as conveyed by the Trustee's Deed; (iv) delivery of the Trustee's Deed for the Property in recordable form to an escrow agent approved by the Primary Institutional First Mortgagee; and (iv) written consent of the Primary Institutional First Mortgagee to the recording of the Confirmation Certificate, which consent shall be provided or withheld within ten (10) business days of written request therefor from the Trustee if the conditions set forth in subparagraphs (i), (ii), (iii), and (iv) above have been met; or

      (b)    the Purchasing Owner has elected not to purchase the Condominium Property or has failed to deliver satisfactory evidence of the availability of the Sale Proceeds within the required time period, and an Approved Alternate Sale Plan has been adopted by the Trustee and the Primary Institutional First Mortgagee.

The Effective Date under this Plan shall be the date on which both this Plan and the Confirmation Certificate have been executed with the formalities of a deed and recorded in the Public Records.

    15.    <u>Distributions</u>.

      (a)    <u>Purpose</u>. Following the termination of the Condominium, the Condominium Property shall be held by the Trustee, as trustee for Unit Owners and Lienors in their order of priority.

      (b)    <u>Notice</u>. Not less than thirty (30) days before the Trustee intends to make the first distribution, the Trustee shall deliver by certified mail, return receipt requested, a notice of the estimated distribution (a "**Distribution Notice**") to all Unit Owners and Lienors (other than the

6

Primary Institutional First Mortgagee) at their last known addresses stating a good faith estimate of the amount of the distributions to each Unit Owner and/or Lienor and the procedures and deadline for notifying the Trustee of any objections to the amount. The deadline to notify the Trustee of any such objections shall be fifteen (15) days after the date the Distribution Notice was mailed. If an Owner or Lienor of a Designated Unit files a timely written objection with the Trustee, the Trustee need not distribute the funds or property allocable to the objecting Unit Owner or Lienor until the Trustee has had a reasonable time to determine the validity of the adverse claim. In the alternative, the Trustee may interplead the Owner(s) and Lienor(s), and any other person claiming an interest in the Unit or corresponding Sales Proceeds, and deposit those Sales Proceeds in the registry of the appropriate court having jurisdiction in Seminole County, Florida, at which time the Condominium Property and the trust established hereunder are free of all claims and liens of the parties to the suit. In an interpleader action, the Trustee and each prevailing party may recover reasonable attorney's fees and costs. If the Trustee does not receive a timely written objection to a Distribution Notice, the Trustee shall be free to distribute the Sales Proceeds and/or property in accordance with the good faith estimate shown in the Distribution Notice and shall have no liability to any party as a result of so doing.

(c) _Distribution Priority on a Sale Other than to Purchasing Owner_. The proceeds from any sale of Condominium Property shall be distributed in the following priority, if such property is sold other than to the Purchasing Owner:

(i) to pay the reasonable Termination Trustee's fees and costs and accounting fees and costs.

(ii) to holders of liens recorded prior to the recording of the Declaration.

(iii) to purchase-money lienholders on Units to the extent necessary to satisfy their liens; however, the distribution may not exceed a Unit Owner's share of the proceeds.

(iv) to lienholders of the Association which have been consented to under Section 718.121(1), Florida Statutes, if any.

(v) to creditors of the Association, as their interests appear.

(vi) to Unit Owners, the proceeds of any sale of Condominium Property (less any FIRPTA withholding required), subject to satisfaction of liens on each Unit in their order of priority, in shares specified in this Plan, unless objected to by a Unit Owner or Lienor as provided in subparagraph (b).

(vii) to Unit Owners, the remaining Condominium Property, subject to satisfaction of liens on each Unit in their order of priority, in shares specified in this Plan, unless objected to by a Unit Owner or Lienor as provided in subparagraph (b).

(d) _Distribution Priority on a Sale to Purchasing Owner_. Notwithstanding the foregoing, the proceeds from a sale of the Condominium Property to Purchasing Owner as contemplated in Section 12 above, shall be distributed to all previous Owners of Designated Units ("**Non-Purchasing Owners**") as follows:

7

          (i)    the portion of the Sales Proceeds attributable to values of the Designated Units (less any FIRPTA withholding required) shall be distributed to the Non-Purchasing Owners in accordance with their Interest in Units, with no portion of said Sales Proceeds being distributed to Purchasing Owner;

          (ii)    the portion of the Sales Proceeds attributable to Condominium Property other than Designated Units shall be distributed to the Non-Purchasing Owners in accordance with their Interest in Other Proceeds, with no portion of said Sales Proceeds being distributed to Purchasing Owner;

          (iii)    any distribution of Sales Proceeds resulting from a sale of the Condominium Property to Purchasing Owner shall, however, be distributed first to any Lienors of the Designated Units (less any FIRPTA withholding required) to the extent necessary to satisfy their liens; however, the distribution to such Lienors may not exceed a Unit Owner's share of the proceeds as provided herein;

          (iv)    to the extent that Purchasing Owner acquires the Condominium Property, Purchasing Owner shall be liable for all other expenses of the Association or the Trustee, and, as such, there shall not be deducted from the distributions to the Non-Purchasing Owners or their Lienors, the cost related to the matters set forth in subparagraphs 15(c)(i), 15(c)(ii), 15(c)(iv), and 15(c)(v) above.

      (e)    <u>Additional Distributions</u>. Other than as provided herein, the Trustee shall have full discretion in making distributions, subject to, and in accordance with, the provisions of this Plan, the Declaration, and, to the extent applicable, the Termination Statute.

    16.    <u>Termination Pursuant to Declaration</u>. Notwithstanding the incorporation of appropriate provisions of the Termination Statute in this Plan and the compliance by the Trustee with certain notice and other provisions of the Termination Statute, this Plan has been adopted under, and in conformity with, Section 19 of the Declaration, and, therefore, no Unit Owner or Lienor has a right to object to the Plan under Section 718.117(16) of the Termination Statute.

    17.    <u>Reports</u>. The Trustee shall prepare and transmit all reports required by this Plan. Copies of all reports shall be sent by regular mail to the Unit Owners and Lienors (including Primary Institutional First Mortgagee) at the mailing addresses provided to the Association by the Unit Owners and Lienors prior to the Effective Date or to any updated addresses provided in writing to the Trustee subsequent to the Effective Date. Within ninety (90) days after the Effective Date, the Trustee shall provide to the Division of Florida Condominiums, Timeshares and Mobile Homes a certified copy of this Plan, as recorded, and the other information required by Section 718.117(15)(b), Florida Statutes.

    18.    <u>Severability and Construction</u>. If any provision of this Plan is held to be invalid or unenforceable to any extent, the same shall not affect the validity or enforceability of the remainder of this Plan. The language used in this Plan shall be deemed to be the language chosen by the parties hereto to express their mutual intent, and no rule of strict construction shall be applied against any party. This Plan shall be construed and enforced in accordance with Florida law, excluding its conflicts of law provisions.

O MAH01 542147 v5
2926160-000001 11/04/2013

19. <u>Venue</u>. Any legal proceeding under this Plan shall, at the option of the Trustee, be brought in the Circuit Court for Seminole County, Florida, and/or under the summary procedure requirements of Section 51.011, Florida Statutes.

20. <u>Effect on Primary Institutional First Mortgagee</u>. At the time of recordation of this Plan, the Primary Institutional First Mortgagee holds, among other things, a mortgage on all of the Purchasing Owner's Units (the "**First Mortgage**") which First Mortgage was recorded prior to the recording of the Declaration. Purchasing Owner, by joining in the execution of this Plan, hereby reaffirms the existence and validity of the First Mortgage and confirms that the First Mortgage shall not be deemed modified, terminated, or satisfied by, or as a result of, the Plan and that, after the Effective Date, the First Mortgage shall exist as a first priority mortgage lien on all of the Property conveyed to the Purchasing Owner by the Trustee's Deed. Notwithstanding anything to the contrary herein, the Purchasing Owner indemnifies, holds harmless, and shall defend the Primary Institutional First Mortgagee against: (i) any and all claims for commissions, fees, taxes, surcharges or other costs which may be made with respect to the Condominium Property, arising from the Plan or any actions taken pursuant to the Plan; (ii) any and all documentary stamp tax and intangible tax in connection with the First Mortgage imposed as a result of the implementation of the Plan; and (iii) any and all liability, obligations, losses, damages, penalties, claims, actions, suits, costs and expenses (including reasonable attorneys' fees and costs, together with reasonable appellate or bankruptcy counsel fees, if any) incurred by the Primary Institutional First Mortgagee in connection with, or arising as a result of, the Plan, the loss or claimed loss of the first priority lien of the First Mortgage or the perfection thereof with respect to the property (as it exists after conveyance under the Trustee's Deed) originally encumbered by the First Mortgage or any part thereof, any claimed modification of the First Mortgage resulting from the Plan, or any claims made by Non-Purchasing Owners as a result of the Plan or any actions taken pursuant thereto.

**IN WITNESS WHEREOF**, pursuant to Section 19 of the Declaration and certain incorporated provisions of the Termination Statute, the undersigned Unit Owner, holding more than eighty percent (80%) of the total voting interests of the Condominium and owning Units to which more than eighty percent (80%) of the total Common Elements of the Condominium are appurtenant, hereby approves and adopts this Plan by executing this Plan in the manner required for the execution of a deed. In accordance with Section 19 of the Declaration, as amended, the Primary Institutional First Mortgagee holding mortgages which represent first liens on at least 67% of the voting interests of all Units has joined in this Plan to evidence its approval and authorization of the Plan. Furthermore, the Trustee has executed and joined in this Plan and agrees to be bound by its terms.

9

APPROVAL, CONSENT AND JOINDER OF UNIT OWNER
FOR PLAN OF TERMINATION OF
SERENITY AT TUSKAWILLA CONDOMINIUM

The undersigned owner of all of the Units of Serenity at Tuskawilla Condominium described on Exhibit "B" attached hereto, hereby consents to, and joins in, the foregoing Plan of Termination of Serenity at Tuskawilla Condominium.

Witness Signatures Below (two required):
(as to both signatories)

_____[signature]_____
Witness Signature on Above Line
Printed Name: Natalie Vallina

_____[signature]_____
Witness Signature on Above Line
Printed Name: Frances G. Ortiz

Unit Owner's Signature Below:

**THE PRESTWICK PARTNERS, LLC,** a Florida limited liability company

By: _____[signature]_____,
Michael Cosculluela, Manager

By: _____[signature]_____,
Daniel J. Marzano, Manager

Date: November 26, 2013

STATE OF Florida          )
                          ) s.s.:
COUNTY OF Miami-Dade      )

The foregoing instrument was acknowledged before me this 26 day of Nov, 2013, by Michael Cosculluela and Daniel J. Marzano, each a Manager of THE PRESTWICK PARTNERS, LLC, a Florida limited liability company, on behalf of said Company. Said persons are either: ☒ personally known to me or ☐ produced _____ and/or _____, respectively, as identification.

AFFIX NOTARY STAMP OR SEAL:

_____[signature]_____
Notary Public Signature on Above Line
Printed Name: Frances G. Ortiz
Notary Public, State of Florida
My commission expires: _____

FRANCES G. ORTIZ
MY COMMISSION # EE 003799
EXPIRES: June 23, 2014
Bonded Thru Notary Public Underwriters

O MAH01 542147 v5
2926160-000001 11/04/2013

APPROVAL, CONSENT, AND JOINDER OF
TERMINATION TRUSTEE
FOR PLAN OF TERMINATION OF
SERENITY AT TUSKAWILLA CONDOMINIUM

The undersigned Termination Trustee for Serenity at Tuskawilla Condominium, hereby consents to, and joins in, the foregoing Plan of Termination of Serenity at Tuskawilla Condominium.

Witness Signatures Below (two required):      Termination Trustee's Signature Below:

_____            By: _____
Witness Signature on Above Line                   Scott W. Fitzpatrick, Esq.
Printed Name: Alissa M. Martinez
                                              Date: 12/9/_____, 2013

_____
Witness Signature on Above Line
Printed Name: Leslie A. Blakeman


STATE OF FLORIDA               )
                               ) s.s.:
COUNTY OF HILLSBOROUGH         )

The foregoing instrument was acknowledged before me this 9th day of December, 2013, by SCOTT W. FITZPATRICK, ESQ., who [X] is personally known to me or [  ] produced _____ P as identification.

AFFIX NOTARY STAMP OR SEAL:        _____
                                   Notary Public Signature on Above Line
                                   Printed Name:_____
                                   Notary Public, State of _____
                                   My commission expires:_____

LESLIE A. BLAKEMAN
MY COMMISSION # EE 064629
EXPIRES: March 22, 2015
Bonded Thru Notary Public Underwriters

## APPROVAL, CONSENT AND JOINDER OF PRIMARY INSTITUTIONAL FIRST MORTGAGEE FOR PLAN OF TERMINATION OF SERENITY AT TUSKAWILLA, A CONDOMINIUM

The undersigned, as the record holder of a first mortgage on all of the Units set forth in Exhibit "B" is the Primary Institutional First Mortgagee as herein defined, and hereby consents to, and joins in, the foregoing Plan of Termination of Serenity at Tuskawilla Condominium.

Witnesses Signatures Below (two required):

_____
Witness Signature on Above Line
Printed Name: Sergio Gonzalez

_____
Witness Signature on Above Line
Printed Name: Lourdes F Cordoba

**FIRSTBANK PUERTO RICO**, a banking institution organized under the laws of the Commonwealth of Puerto Rico, doing business in Florida as FirstBank Florida

By: _____
Name: Elsie M Alvarez
Title: Senior Vice President

Date: 12-12, 2013

STATE OF Florida         )
                         ) s.s.:
COUNTY OF Miami-Dade     )

The foregoing instrument was acknowledged before me this 12th day of December, 2013, by Elsie M. Alvarez as S.V.P. of FIRSTBANK PUERTO RICO, a banking institution organized under the laws of the Commonwealth of Puerto Rico, doing business in Florida as FirstBank Florida, on behalf of said banking institution. Said person [✓] is personally known to me or [ ] produced _____ as identification.

AFFIX NOTARY STAMP OR SEAL:

CARMEN O. GUARDARRAMA
MY COMMISSION # EE 094303
EXPIRES: May 15, 2015
Bonded Thru Notary Public Underwriters

_____
Notary Public Signature on Above Line
Printed Name:_____
Notary Public, State of _____
My commission expires:_____

O MAH01 542147 v5
2926160-000001 11/04/2013

# EXHIBIT "A"

## Legal Description of All Units in the Condominium Subject to the Plan

The following Condominium Units of Serenity at Tuskawilla Condominium, together with an undivided interest in the common elements appurtenant thereto, according to the Declaration of Condominium thereof, recorded July 12, 2006, in Official Records Book 6323, Page 1435, of the Public Records of Seminole County, Florida, as amended by that certain Amendment to Declaration of Condominium, recorded December 13, 2013, in Official Records Book 8179, Page 474 of the Public Records of Seminole County, Florida:

| BUILDING | UNIT NUMBERS | BUILDING | UNIT NUMBERS |
|---|---|---|---|
| 1050 | 100, 102, 104, 106, 200, 202, 204, 206 | 4241 | 101, 103, 105, 107, 201, 203, 205, 207 |
| 1060 | 101, 103, 105, 107, 109, 111, 113, 115, 201, 203, 205, 207, 209, 211, 213, 215 | 4249 | 101, 103, 105, 107, 201, 203, 205, 207 |
| 1081 | 100, 102, 104, 106, 108, 110, 112, 114, 200, 202, 204, 206, 208, 210, 212, 214 | 4257 | 101, 103, 105, 107, 201, 203, 205, 207 |
| 1101 | 101, 103, 105, 107, 109, 111, 113, 115, 201, 203, 205, 207, 209, 211, 213, 215 | 4264 | 100, 102, 104, 106, 200, 202, 204, 206 |
| 1110 | 100, 102, 104, 106, 108, 110, 112, 114, 200, 202, 204, 206, 208, 210, 212, 214 | 4265 | 101, 103, 105, 107, 201, 203, 205, 207 |
| 1120 | 100, 102, 104, 106, 200, 202, 204, 206 | 4273 | 101, 103, 105, 107, 201, 203, 205, 207 |
| 1121 | 101, 103, 105, 107, 109, 111, 113, 115, 201, 203, 205, 207, 209, 211, 213, 215 | 4381 | 101, 103, 105, 107, 109, 111, 113, 115, 201, 203, 205, 207, 209, 211, 213, 215 |
| 1130 | 100, 102, 104, 106, 200, 202, 204, 206 | 4405 | 101, 103, 105, 107, 109, 111, 113, 115, 201, 203, 205, 207, 209, 211, 213, 215 |
| 4200 | 100, 102, 104, 106, 200, 202, 204, 206 | 4410 | 100, 102, 104, 106, 200, 202, 204, 206 |
| 4201 | 101, 103, 105, 107, 201, 203, 205, 207 | 4425 | 101, 103, 105, 107, 201, 203, 205, 207 |
| 4208 | 100, 102, 104, 106, 200, 202, 204, 206 | 4455 | 101, 103, 105, 107, 109, 111, 113, 115, 201, 203, 205, 207, 209, 211, 213, 215 |
| 4209 | 101, 103, 105, 107, 201, 203, 205, 207 | 4475 | 101, 103, 105, 107, 109, 111, 113, 115, 201, 203, 205, 207, 209, 211, 213, 215 |
| 4216 | 100, 102, 104, 106, 200, 202, 204, 206 | 4505 | 101, 103, 105, 107, 109, 111, 113, 115, 201, 203, 205, 207, 209, 211, 213, 215 |
| 4217 | 101, 103, 105, 107, 201, 203, 205, 207 | 4520 | 100, 102, 104, 106, 200, 202, 204, 206 |
| 4225 | 101, 103, 105, 107, 201, 203, 205, 207 | 4525 | 101, 103, 105, 107, 109, 111, 113, 115, 201, 203, 205, 207, 209, 211, 213, 215 |
| 4233 | 101, 103, 105, 107, 201, 203, 205, 207 | 4565 | 101, 103, 105, 107, 109, 111, 113, 115, 201, 203, 205, 207, 209, 211, 213, 215 |
| 4240 | 100, 102, 104, 106, 200, 202, 204, 206 | 4585 | 101, 103, 105, 107, 201, 203, 205, 207 |

# EXHIBIT "B"

## Legal Description of Units Owned by Purchasing Owner

The following Condominium Units of Serenity at Tuskawilla Condominium, together with an undivided interest in the common elements appurtenant thereto, according to the Declaration of Condominium thereof, recorded July 12, 2006, in Official Records Book 6323, Page 1435, of the Public Records of Seminole County, Florida, as amended by that certain Amendment to Declaration of Condominium, recorded December 13, 2013, in Official Records Book 8179, Page 474, of the Public Records of Seminole County, Florida.

| BUILDING | UNIT NUMBERS | BUILDING | UNIT NUMBERS |
|---|---|---|---|
| 1050 | 100, 102, 104, 106, 200, 202, 204, 206 | 4241 | 101, 103, 105, 201 |
| 1060 | 101, 107, 111, 113, 115, 201, 203, 205, 207, 209, 211, 213, 215 | 4249 | 101, 107, 201, 205 |
| 1081 | 100, 102, 104, 106, 108, 110, 112, 200, 202, 204, 206, 208, 212 | 4257 | 101, 201, 207 |
| 1101 | 101, 105, 107, 109, 111, 113, 115, 201, 203, 205, 207, 209, 211, 213 | 4264 | 102, 104, 200, 204, 206 |
| 1110 | 100, 102, 104, 106, 110, 112, 114, 200, 202, 204, 206, 210, 212, 214 | 4265 | 105, 107, 201, 205 |
| 1120 | 100, 102, 104, 106, 200, 202, 204, 206 | 4273 | 101, 105, 107, 203, 207 |
| 1121 | 101, 103, 105, 109, 113, 115, 201, 203, 205, 209, 213, 215 | 4381 | 101, 103, 105, 107, 109, 111, 115, 201, 203, 205, 207, 209, 211, 213, 215 |
| 1130 | 100, 102, 104, 106, 200, 202, 204, 206 | 4405 | 101, 103, 105, 107, 109, 111, 113, 115, 201, 203, 205, 207, 209, 211, 213, 215 |
| 4200 | 100, 102, 106, 200, 202, 204, 206 | 4410 | 100, 102, 106, 200, 204, 206 |
| 4201 | 101, 103, 105, 107, 201, 203, 205, 207 | 4425 | 101, 103, 105, 107, 201, 203, 205 |
| 4208 | 100, 102, 104, 106, 200, 202, 204, 206 | 4455 | 101, 103, 105, 107, 109, 111, 113, 115, 201, 203, 205, 207, 209, 211, 213, 215 |
| 4209 | 101, 103, 107, 201, 203, 205, 207 | 4475 | 101, 103, 107, 109, 111, 113, 115, 201, 203, 205, 207, 211, 213, 215 |
| 4216 | 100, 102, 104, 106, 200, 202, 204, 206 | 4505 | 101, 103, 105, 107, 109, 111, 113, 115, 203, 205, 207, 209, 211 |
| 4217 | 101, 201, 205 | 4520 | 106, 200, 202, 204 |
| 4225 | 101, 103, 107, 201, 203, 207 | 4525 | 101, 103, 105, 107, 109, 111, 113, 115, 201, 203, 205, 207, 211, 213 |
| 4233 | 101, 103, 201, 203, 205 | 4565 | 101, 105, 107, 109, 111, 113, 115, 201, 203, 205, 207, 209, 211, 213, 215 |
| 4240 | 100, 102, 104, 106, 200, 204 | 4585 | 101, 105, 107, 201, 203, 205, 207 |

O MAH01 542147 v5
2926160-000001 11/04/2013